Michael LABONTE

v.

### NATIONAL GRANGE MUTUAL INSURANCE CO.

No. 2001–339–Appeal.

Supreme Court of Rhode Island.

Dec. 5, 2002.

Peter J. Comerford, Providence, for Plaintiff.

Alan Garber, Raymond A. LaFazia, Providence, for Defendant.

Present: WILLIAMS, C.J., and LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The plaintiff, Michael LaBonte, filed a complaint against the defendant, National Grange Mutual Insurance Company, on counts of bad faith in violation of G.L.1956 § 9–1–33, abuse of process, breach of fiduciary duties, and breach of contract. After a summary judgment was entered in favor of the defendant on all four counts, the plaintiff appealed the denial of his motions to produce a portion of the defendant's claim file and to disqualify the defendant's counsel, and the granting of summary judgment in favor of the defendant. This case came before the Supreme Court for oral argument on October 31, 2002, pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be summarily decided. Having reviewed the record and the parties' memoranda, and having considered counsels' oral arguments, we conclude that cause has not been shown. Therefore, we proceed to decide the case at this time.

In the summer of 1998, plaintiff, who was an independent painting contractor, sanded and painted part of the exterior of a condominium in Newport. In September of that year, plaintiff read in the Newport Daily News that one of the residents of the condominium, Kelly Murphy (Murphy), alleged that her son had been poisoned by lead chips that plaintiff had removed while sanding. The plaintiff thereupon sent the article to defendant, his insurer at the time, requesting that it cover any claims that may arise from the facts alleged. The defendant responded by letter, reserving its right to deny coverage. In October 1998, the Rhode Island Department of Environmental Manage-

ment informed defendant that it had received a complaint filed by Murphy, alleging that plaintiff's sanding had caused lead poisoning in her son.

In January 1999, defendant's counsel sent a letter to plaintiff requesting an "examination under oath." The plaintiff asked defendant to provide independent counsel to represent him at the examination, and defendant refused. Thereafter, defendant filed suit against plaintiff in the United States District Court for the District of Rhode Island, seeking a declaratory judgment that plaintiff's policy excludes coverage of any tort claims Murphy may file against plaintiff arising from lead paint contamination and a determination that plaintiff's failure to provide defendant's requested examination was a breach of contract. As part of the federal litigation, defendant deposed plaintiff, but the federal case was stayed in February 2000.

Subsequently, plaintiff commenced this action in state court, eventually bringing four claims, all stemming from defendant's actions against plaintiff in federal court. In September 2000, the Superior Court heard two motions brought by plaintiff, one seeking plaintiff's claim file from defendant and the other seeking to have defendant's counsel disqualified. The hearing justice denied both motions. In June 2001, the justice heard and granted defendant's motion for summary judgment on all four counts.

■ The first issue on appeal is whether the trial justice erred in denying plaintiff's request for the "entire claim file * * * of the third-party claim against [him]." At the time of the request, and indeed to the date of the show cause hearing, Murphy had never filed suit against plaintiff. Because there was no third-party tort claim that defendant had to defend, the hearing justice did not err in rejecting plaintiff's request.

■ The second issue is whether the hearing justice erred in denying plaintiff's request to disqualify defendant's attorney in defendant's federal case against plaintiff. According to plaintiff, that same counsel "owed a fiduciary duty to [plaintiff] in [defendant's] handling of the third party tort claim against [plaintiff]." Again, in the absence of any third-party tort claim having been filed against plaintiff, the trial justice did not err in denying plaintiff's motion, without prejudice.

■ The final issue is whether the Superior Court justice erred in granting summary judgment in favor of defendant on the four counts. In reviewing an appeal of a summary judgment, this Court employs the same standards used by the trial justice. *Bennett v. Napolitano,* 746 A.2d 138, 140 (R.I.2000). Without weighing the evidence or passing upon issues of credibility, we must consider *de novo* whether there are any material issues of fact in dispute, drawing all reasonable inferences in favor of the nonmoving party. *Id.* We shall sustain a summary judgment only if our review of the admissible evidence viewed in the light most favorable to the nonmoving party reveals no genuine issue of material fact, and we conclude that the moving party was entitled to judgment as a matter of law. *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1225 (R.I.1996). A party that opposes a summary judgment motion has the burden of proving by competent evidence the existence of a disputed material issue of fact, and that party cannot rest on mere allegations or denials in the pleadings or on conclusions or legal opinions. *Id.*

■ The plaintiff's first claim was that defendant acted in bad faith, in violation of § 9–1–33, when it brought the declaratory judgment action in federal court. Section 9–1–33 states, in pertinent part, that "an

insured * * * may bring an action against the insurer * * * when it is alleged the insurer wrongfully and in bad faith refused to pay or settle a claim * * * or otherwise wrongfully and in bad faith refused to timely perform its obligations under the contract of insurance." As the hearing justice noted, there was no claim against plaintiff at the time, and plaintiff alleged no facts indicating that defendant "refused to timely perform its obligations." In *Rumford Property and Liability Insurance Co. v. Carbone*, 590 A.2d 398 (R.I. 1991), we held that an insurer wishing to avoid liability may bring a declaratory judgment action in order to clarify coverage terms without the action necessarily being viewed as a "bad-faith maneuver." *Id.* at 401. The plaintiff here provided no evidence that defendant was doing more than attempting to clarify its coverage. Therefore, plaintiff did not meet his burden in opposing defendant's summary judgment motion on the bad-faith count.

■ The plaintiff also argued that a summary judgment was inappropriate on his claim that defendant's actions constituted an abuse of process because defendant's counsel admitted that one of the goals of the federal suit was to acquire the information from plaintiff that defendant hoped to obtain by an interview. An "action of abuse of process provides a remedy for a claim arising when a legal procedure, although set in motion in proper form, has been perverted to accomplish an ulterior or wrongful purpose for which it was not designed." *Nagy v. McBurney*, 120 R.I. 925, 934, 392 A.2d 365, 370 (1978). But bringing a declaratory judgment action to clarify coverage is a valid use of a legal procedure. *See ante.* Moreover, defendant's second claim in the federal suit was that plaintiff had breached his insurance contract by refusing the interview. In our opinion, defendant's purpose in acquiring information from plaintiff was not "ulterior or wrongful;" rather, on the facts alleged by plaintiff, the purpose was straightforward and legitimate.

■ The plaintiff further claimed that the hearing justice erred in granting defendant's summary judgment motion on plaintiff's counts that his insurer breached its fiduciary and contractual duties to plaintiff. The justice found that each claim was "at best premature—since any duties that would arise would come after a claim has been filed [against the insured]." Although we decline to hold that an insurer owes no fiduciary or contract duty to an insured in the absence of a claim against the insured, plaintiff here has alleged no facts that would indicate that defendant breached a fiduciary or contractual duty when it brought suit in federal court, and plaintiff cited no improper purpose for the suit, nor did he allege that defendant failed to provide coverage. As the justice noted, no claim had been filed against plaintiff.

■ The plaintiff also contended that defendant was required under *Employers' Fire Insurance Co. v. Beals*, 103 R.I. 623, 240 A.2d 397 (1968), to provide him with independent counsel when it sought to examine him under oath. In *Beals*, the insurer found itself in a situation in which it was simultaneously suing the insured in a declaratory judgment action and defending the insured in a tort suit. In the declaratory judgment action, the insurer attempted to demonstrate that the insured's actions were intentional, a position it certainly did not want to advance in the tort action. In face of the clear conflict, this Court required the insurer to provide the insured with an independent attorney in the tort action and held that "the insurer's desire to control the defense must yield to its obligation to defend its policyholder." *Id.* at 634, 240 A.2d at 403. Here, in contrast, plaintiff had not yet been sued when he

requested independent counsel. Moreover, defendant had not yet brought a declaratory action against plaintiff at the time it sought to examine him.

Therefore, on the basis of the facts of this case, we decline to extend *Beals* to require an insurer to provide independent counsel to an insured on each occasion that the insurer initiates a coverage investigation. In this case, it is our opinion that the plaintiff, an insured, had a duty to cooperate with his insurance carrier. The mere fact that a conflict might arise at some later point does not lessen the duty of an insured to cooperate with an investigation. Here, the plaintiff's adversarial posture created a conflict situation for which he should not be rewarded.

Accordingly, we deny the plaintiff's appeal and affirm the judgment of the Superior Court, to which we return the papers in the case.